UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY JACKSON,

                        Petitioner,                      5:07-CV-1303
vs.                                              (NAM)
                                                   Related Criminal Action
UNITED STATES OF AMERICA,              5:03-CR-0243-013

                      Respondent.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

Anthony Jackson
02-A-6522
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 1
Petitioner, *pro se*

Office of the United                          John M. Katko, Esq.
States Attorney                                   Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198
Attorney for Respondent

**Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.**      **Background**[1]

On August 7, 2003, a Superseding Indictment was returned by a grand jury sitting in the Northern District of New York. *See* 03-CR-0243, Dkt. No. 69 ("Superceding Indictment"). That accusatory instrument alleged that petitioner *pro se* Anthony Jackson and others combined,

---

[1] The background information contained in this Memorandum-Decision and Order is derived from the documents filed in the present civil action, *Jackson v. United States*, 5:07-CV-1303 ("07-CV-1303"), as well as the file of the related criminal matter, *United States v. Edwards et al.*, 5:03-CR-0243 (N.D.N.Y.) ("03-CR-0243").

conspired, confederated, and agreed to engage in a pattern of racketeering activity through their membership in a criminal enterprise known as the Boot Camp Gang. *Id.*

On January 15, 2004, following negotiations between Jackson's counsel and Assistant United States Attorney John Katko ("AUSA Katko"), the parties entered into a plea agreement relating to the Superceding Indictment. 03-CR-0243, Dkt. No. 199 ("Plea Agreement"). That agreement contained, *inter alia*, the factual basis for Jackson's guilty plea (*see* Plea Agreement at ¶ 4) and provided that, under the terms of the Plea Agreement, he was expressly waiving his right to appeal or collaterally attack his conviction and any sentence of imprisonment of 210 months or less. *Id.* at ¶ 11.

At the proceeding over which this Court presided wherein Jackson formally entered his change of plea, the Court informed him of the rights he would be waiving by entering a guilty plea and the consequences of that plea. *See* Transcript of Change of Plea of Anthony Jackson (03-CR-0243, Dkt. No. 370) ("Plea Tr.") at pp. 2-4. After Jackson acknowledged that he was aware of those facts, *id.* at p. 4, the Court took his guilty plea and then elicited answers from him which established, *inter alia*, that he had not been threatened into changing his plea, he was not under any duress, and he was entering the plea voluntarily and of his own free will. *Id.* at pp. 6-11. AUSA Katko then discussed what the Government would have proven if the case had gone to trial, *id.* at pp. 13-15, and Jackson conceded that he had engaged in the acts summarized by the prosecutor which led to the criminal charges that were brought against Jackson. *Id.* at p. 15. AUSA Katko then declared on the record that although Jackson was not subject to any mandatory minimum term of imprisonment, he might nevertheless receive a maximum term of life imprisonment in light of his guilty plea. *Id.* at pp. 15-16. Jackson also acknowledged that his counsel had discussed the United States Sentencing Guidelines ("Sentencing Guidelines") with Jackson, and that he understood their application to his

case. *Id* at p. 17. This Court then accepted his guilty plea. *Id.* at pp. 22-23.

At the sentencing hearing following Jackson's guilty plea, this Court found his Total Offense Level to be 31, his criminal history category to be V, and the applicable range of imprisonment under the Sentencing Guidelines to be between 168 and 210 months. *See* Transcript of Sentencing of Anthony Jackson (1/5/05) (03-CR-0243, Dkt. No. 623) ("Sentencing Tr.") at p. 9. The Court thereafter imposed a sentence of 189 months imprisonment on Jackson. *Id.*[2]

Jackson filed an appeal of the foregoing with the Second Circuit. In an unpublished decision dated January 19, 2007, that court granted the Government's motion for "summary affirmance of Jackson's judgment of conviction and sentence," however it permitted Jackson to pursue a collateral challenge to his conviction relating to the voluntary nature of his guilty plea and the effectiveness of his trial counsel through a motion brought pursuant to 28 U.S.C. § 2255. *See United States v. Edwards et al.*, No. 04-6558-cr, 214 Fed.Appx. 57, at *62 (2d Cir. Jan. 19, 2007).

On December 14, 2007, Jackson commenced the present action by filing a Motion to Vacate, Set Aside or Correct his Sentence. *See* 07-CV-1303, Dkt. No. 1 ("Motion to Vacate"). In his application, Jackson argues that his guilty plea must be set aside because he received the ineffective assistance of trial counsel in the related criminal matter. *See* Motion to Vacate. Specifically, he claims that such counsel: i) wrongfully represented to Jackson that he could not receive a sentence of imprisonment longer than ten years if he pleaded guilty; ii) improperly claimed that if Jackson elected to proceed to trial on the charges in the Superceding Indictment, he could be sentenced to a maximum term of life imprisonment; and iii) permitted Jackson to plead guilty to a Racketeer Influenced and Corrupt Organizations Act ("RICO") charge despite the fact that the Superceding

---

[2] That sentence was subsequently reduced by this Court to 157 months imprisonment due to a reduction in the relevant guideline sentencing range adopted and made retroactive by the United States Sentencing Commission. *See* 03-CR-0243, Dkt. No. 773.

3

Indictment did not contain allegations which, if proven, would have established his guilt of a RICO violation. *See* Motion to Vacate; *see also* Memorandum of Law in Support of Motion to Vacate (03-CR-0243, Dkt. No. 724).

The Office of the United States Attorney for the Northern District of New York, acting on respondent's behalf, filed a memorandum of law in opposition to Jackson's application. *See* 03-CR-0243, Dkt. No. 789. In that submission, respondent argues that the claims asserted by Jackson in this action are without merit and that his application must be denied. *Id.*

Petitioner thereafter filed a reply memorandum of law in further support of his Motion to Vacate. *See* 03-CR-0243, Dkt. No. 801. In that filing, Jackson reiterates his claims that his Motion to Vacate should be granted. *Id.*

**II.     Discussion**

    **A.     Applicable Legal Standard**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const., amend. VI. Courts have long recognized this right to counsel as one that entitles a defendant to the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (citations omitted). Under the familiar two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), an individual who claims he received the ineffective assistance of counsel must demonstrate that the representation: i) "fell below an objective standard of reasonableness," *id.* at 688; and ii) prejudiced the petitioner. *Id.* at 694; *see also Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006) (citing *Strickland*, 466 U.S. at 688, 694).

    **B.     Substance of Jackson's Claims**

        **i)     Representations of Counsel Regarding Maximum Sentence If**

4

**Jackson Pleaded Guilty**

Petitioner initially argues that trial counsel wrongfully advised Jackson that he could not receive a sentence of imprisonment longer than ten years if he entered a guilty plea before this Court.  *See* Motion to Vacate, Point 1.  Specifically, he claims that although the Plea Agreement did not specifically discuss the range of imprisonment to which he would be subject upon entering his guilty plea, trial counsel "affirmatively misled [Jackson] by stating that the plea agreement would result in a sentence of no more than 10 years imprisonment.  [Petitioner] would have gone to trial rather than plead guilty if he knew that he could be sentenced to more than 10 years." *Id.* at p. 3.  In support of this claim, Jackson has submitted an affidavit completed by Tiffany Waymon, the mother of Jackson's child, in which she declares, *inter alia*, that in January, 2004, she met with Jackson's counsel and two detectives, and that at that time, she was informed that Jackson "didn't feel he was guilty of everything the prosecution was accusing him of.  And he did not want to take a deal for ten years.  [Defense counsel] and the detectives then told [Waymon] that ten years would be the max [Jackson] would receive."  *See* 03-CR-0243, Dkt. No. 724-2 ("Waymon Aff.") at ¶¶ 4-5.  Petitioner also cites the transcript of the proceeding wherein he pleaded guilty in support of this claim.  He notes that at that hearing, when this Court inquired of AUSA Katko whether he could provide a "ball park figure" concerning Jackson's sentence under the Sentencing Guidelines, the Government's attorney stated:  "Worst case scenario, it's at a criminal history category IV, and assuming that, and he's a level 32, minus three for acceptance of responsibility, which the government believes he qualifies for, he would face a sentencing range of 121-151 months imprisonment." *See* Motion to Vacate at p. 5 (quoting Sentencing Tr. at pp. 16-17).  He claims that the foregoing establishes that he received the ineffective assistance of counsel when he was sentenced to a term of 189 months imprisonment.  Motion to Vacate at pp. 4-6.

5

Initially, the Court notes that Jackson's claims are refuted by the terms of his Plea Agreement into which he voluntarily entered.[3] Specifically, the terms of that agreement clearly provide that Jackson was subject to a maximum term of *life imprisonment* upon his guilty plea to the top count in the Indictment. *See* Plea Agreement at ¶ 2(a).

Moreover, the colloquy at the proceeding wherein Jackson formally entered that guilty plea further refutes petitioner's current contention that he was misled by his attorney into believing that he could not receive a sentence exceeding one hundred twenty months imprisonment if he pleaded guilty. The record establishes that after the exchange cited by Jackson in support of this aspect of his application, this Court engaged in the following colloquy with Jackson:

> THE COURT: Okay. All right. Anthony Jackson, has [defense counsel] explained the Sentencing Guidelines with you and gone over them with you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand how they work, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. I have to tell you, you've made an agreement with the Government, all right? I'm not bound by that agreement. That's between you and the Government. And I just want you to understand that if, after I get the presentence report, it comes out differently than you guys thought, I'm not bound by what you and the Government put together, do you understand that?

---

[3] Although not raised by Jackson as a ground for relief in this action, the record conclusively establishes that his guilty plea in the related criminal matter was knowingly, voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty plea be knowingly and voluntarily entered).

> THE DEFENDANT:   Yes.
>
> THE COURT:   Okay. And you realize you can't withdraw your plea of guilty; all you can do is, when this is all done, if I sentence you to more than 210 months – I believe that's the waiver, right?
>
> AUSA KATKO:   That's correct.
>
> THE COURT:   If I were to sentence you to more than that, then you could appeal my sentencing, and that would be it.  Is that your understanding, too?
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   Okay.  All right.  Now that you've been informed of the penalties, to the extent that we know them at this time, and the Sentencing Guidelines and my role under the guidelines, do you still wish to plead guilty?
>
> THE DEFENDANT:   Yes.

Plea Tr. at pp. 17-18.  Petitioner has offered no explanation as to why he failed to alert this Court at the time of the exchange quoted above of his current claim that he had been assured by his counsel that Jackson would not be sentenced to a term of imprisonment exceeding 120 months.  To the contrary, the record establishes that the *minimum term of imprisonment* in the sentencing range described by AUSA Katko at Jackson's change of plea – 121 months – exceeded the ten year term now discussed by Jackson, while the maximum term in that range reflected a term exceeding twelve and one-half years in prison.  *Id.* at p. 17.  Furthermore, Jackson subsequently acknowledged at that proceeding that he was aware he could not appeal his sentence unless it exceeded approximately seventeen and one-half years imprisonment.  *Id.* at p. 18.

   The Supreme Court has observed that statements made during a plea allocution "carry a

strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*; *see also Marcelin v. Garvin*, 97 Civ. 2996, 1999 WL 977221 at *7 (S.D.N.Y. Oct. 26, 1999) (Peck, M.J.).  As the Second Circuit noted in *Adames v. United States*, 171 F.3d 728 (2d Cir. 1999), a defendant's statements at his plea hearing "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Id.* at 732.

Nothing before the Court casts doubt on the facts that:  i) Jackson's Plea Agreement specifically provided that he could receive a sentence of life imprisonment if he pleaded guilty (Plea Agreement at ¶ 2(a)); and ii) at the hearing wherein Jackson pleaded guilty before this Court, he was informed that although the "ball park" guideline range of imprisonment was 121-151 months, he acknowledged that he was aware that under the terms of his Plea Agreement, he was prohibited from appealing any sentence of 210 months imprisonment or less (Plea Tr. at pp. 16-17).   Since those objective facts belie petitioner's current claim that he was assured by counsel that Jackson could not receive a sentence that exceeded one hundred twenty months imprisonment if he pleaded guilty, the Court denies this aspect of Jackson's Motion to Vacate as without substance.

### ii) **Representations of Counsel Regarding Maximum Sentence If Jackson Did Not Plead Guilty**

Jackson also claims that his trial counsel rendered ineffective assistance because he wrongfully estimated the maximum term of imprisonment to which Jackson would be subject if he declined to plead guilty and instead exercised his constitutional right to a jury trial on the charges against him in the Superceding Indictment.  *See* Motion to Vacate.

Jackson offers two, related theories in support of this claim.

He first contends that the allegations contained in the Superceding Indictment, even if established by the Government at trial, would have subjected petitioner to a maximum term of twenty years imprisonment. *See id.*, Point 2. He claims, however, that defense counsel wrongfully advised petitioner that he could be sentenced to a term of life imprisonment if he proceeded to trial on the charges. In support of this claim, Jackson notes that in Waymon's affidavit, she declares that it was represented to Jackson that "he would surely get life" if he went to trial on the charges, and that she then persuaded Jackson to plead guilty "even though you're not guilty of all they've charged you with [because] ten years we can live with, but life is out [sic] the question." *See* Waymon Aff. at ¶¶ 6, 10.

Jackson's related claim asserts that the one of the two predicate acts he was alleged to have committed in conjunction with the claimed RICO conspiracy to which he pleaded guilty was a misdemeanor crime for which he could not have received a term of imprisonment exceeding one year. Motion to Vacate, Point 3. Petitioner reasons that because the Superceding Indictment did not charge Jackson with two predicates acts, both of which were punishable by a term of imprisonment exceeding one year, trial counsel's advice that Jackson could have received a term of life imprisonment if he were convicted by jury of the RICO conspiracy charge was critically flawed and objectively unreasonable. *Id.*

Addressing first Jackson's claim that he could not have been sentenced to a prison term exceeding twenty years even if he were found guilty of the conduct charged in the Superceding Indictment, *see* Motion to Vacate, Point 2, the Court notes that such accusatory instrument alleged that Jackson and others combined, conspired, confederated, and agreed to engage in a pattern of racketeering activity through their membership in a criminal enterprise known as the Boot Camp

9

Gang. *See* Superceding Indictment at pp. 7-9. That instrument accused members of the criminal enterprise of committing numerous overt, criminal acts, including murder. *Id.* at p. 11. As this Court has previously observed in denying a motion to vacate filed by another member of the Boot Camp Gang, such an allegation was "significant because, if proven, it raised the statutory maximum term to life imprisonment ***for each of the defendants*** in the Superceding Indictment pursuant to 18 U.S.C. § 1963(a), which provides that the statutory maximum penalty is 'life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment.' " *Holbdy v. United States*, Nos. 03-CR-0243 & 05-CV-1406, 2008 WL 2704913, at *1 n.2 (N.D.N.Y. July 8, 2008) (emphasis added). Thus, any claim that counsel rendered ineffective assistance by wrongfully advising Jackson that he was subject to a term of life imprisonment if convicted of the charges brought against him in the Superceding Indictment is without merit.

     Jackson also asserts that because one of the two predicate acts he was charged with committing in the Superceding Indictment is a misdemeanor offense, and therefore punishable by a maximum of one year in prison, he could not properly be found guilty of the RICO charge, which required proof that Jackson committed two or more crimes for which the maximum penalty exceeded one year imprisonment. *See* Motion to Vacate, Point 3. He specifically claims:

> [i]n the present case, Mr. Jackson was charged with only two predicate acts in the "RICO" conspiracy but it is clear that one of the predicate acts, "Criminal Possession of a Controlled Substance" in the seventh degree, is a misdemeanor and under New York Penal Law, Article §220.03 is not punishable by more than a year in prison. Therefore in accordance with Federal Statute 18 USC §1961 and the 2nd, Circuit Court of Appeals decision in the *Tomosulo* case, (*see United States v. Tomasulo*, 726.F.2d 913, 1984 (2nd cir.) it is clear that Mr. Jackson does not possess the two required predicate acts to constitute a "pattern of racketeering" in relationship to Title 18 USC § 1961(5). Mr. Jackson's "RICO" conspiracy conviction should be vacated and dismissed.

Motion to Vacate at pp. 14-15.  Petitioner argues that his counsel's failure to correctly advise Jackson of the maximum term of imprisonment to which he was subject if he elected to go to trial on the charges in the Superceding Indictment demonstrates that counsel rendered ineffective assistance. *Id.* at pp. 15-19.

This argument, however, fails to acknowledge Supreme Court precedent which provides that courts cannot excuse from the reach of a RICO conspiracy charge "an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." *Salinas v. United States*, 522 U.S. 52, 65 (1997).  Instead, to establish a party's guilt of such a charge, the Government need only establish that the members of the conspiracy "agree[d] to pursue the same criminal objective;" recognizing the fact that although its members "may divide up the work ... each is responsible for the acts of each other." *Id.* at pp. 63-64 (citation omitted); *see also United States v. Jones*, No. 05-CR-322, 2007 WL 1428464, at *12 (N.D.N.Y. May 11, 2007).  Thus, "a conspiracy conviction may be sustained under subsection (d) [of Title 18 U.S.C. § 1962] if a co-conspirator committed at least two acts of racketeering and the defendant 'knew about and agreed to facilitate the scheme.' " *United States v. Hickey*, 16 F.Supp.2d 223, 229 (E.D.N.Y. 1998) (citing *Salinas*).

Jackson himself concedes his guilt of the two predicate acts brought against him in the Superceding Indictment.  Motion to Vacate at p. 11.  Moreover, the record amply supports the conclusion that Jackson knew about, and agreed to facilitate, the other criminal schemes of the Boot Camp Gang alleged in the Superceding Indictment.  For example, at the hearing wherein he agreed to voluntarily enter his guilty plea, Jackson admitted his guilt of:

> multiple acts involving conspiracy to possess with intent to distribute cocaine base, crack, and marijuana, as well as possession with intent

11

> to distribute and distribution of cocaine base, crack, and marijuana, in violation of Title 21 United States Code, Sections 841(a) and 846, and multiple acts indictable under Title 18 United States Code, Section 1503, obstruction of justice, and Title 18 United States Code, Section 1512(b)(3), witness tampering.

Plea Tr. at p. 7.

Moreover, at Jackson's sentencing, this Court commented on its personal knowledge of the criminal activities of the Boot Camp Gang based upon the criminal matters that had come before the Court relating to that criminal enterprise. Specifically, the Court noted that the "jointly undertaken criminal activity" of Jackson and its gang members included "the distribution of ... drugs, both ... marijuana and ... cocaine," and further that it was "reasonably foreseeable that [Jackson] knew guns would be used to carry out the criminal activity," which resulted in seven deaths and scores of people who were either shot or stabbed by members of Jackson's gang. *See* Sentencing Tr. at p. 5. Furthermore, the record demonstrates that Jackson's counsel was provided with approximately 2,700 pages of discovery in conjunction with the criminal action brought against Jackson. Plea Tr. at p. 20. That fact supports the conclusion that trial counsel was aware of not only the alleged activities of Jackson, but also the criminal activities of the co-defendants named in the Superceding Indictment which, as noted above, included homicide and significant levels of drug trafficking.

In sum, counsel properly represented to Jackson that he was subject to a maximum term of life imprisonment in light of the charges returned against him in the Superceding Indictment. Therefore, Jackson's claims that: i) he was only subject to a maximum term of imprisonment of twenty years (Motion to Vacate, Point 2) and ii) his criminal activity was insufficient to establish his guilt of a RICO violation (*id.*, Point 3) are without substance.

**III.    Certificate of Appealability**

Finally, the Court notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . (B) the final order in a proceeding under section 2255."[4]  28 U.S.C. § 2253(c)(1). A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2). Since petitioner has failed to make such a showing, the Court declines to issue any Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

**WHEREFORE**,

After carefully reviewing Jackson's habeas application, respondent's opposition thereto, the documents filed in both this civil action and the related criminal matter, the applicable law, and for the reasons stated herein, its is hereby

**ORDERED,** that Jackson's Motion to Vacate is **DENIED**, and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order on the parties by regular or electronic mail.

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Date:  October 5, 2009

_____
Norman A. Mordue
Chief United States District Court Judge

---

[4] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed. R. App. P. 22(b).